IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03051-M

DALE MARTIN,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

**ORDER**

This cause is before the court on defendant's motion to dismiss or, alternatively, for summary judgment. Mot. [D.E. 24]. For the reasons discussed below, the court grants the motion.

Relevant Procedural History:

On February 16, 2021, Dale Martin ("plaintiff"), an inmate at F.C.I. Butner ("Butner") proceeding *pro se* and without prepayment of fees, filed a complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. [D.E. 1, 2, 7]. Plaintiff's unverified complaint alleges, circa March 6, 2020: Butner staff's failure to secure wheelchair restraints in a transport bus caused him to trip, fall, hit his head, and lose consciousness; a "collision" between transport buses caused him to "slam into another part of the bus, hurting [his] head and neck"; "prior to [his] fall and the collision[,] there was the smell of alcohol on the staff's breath"; and, although Butner health staff treated him for a small lip cut, they ignored his severe headache and neck pain complaints, "did no kind of concussion protocol [sic]," did not provide pain medication, and failed to properly treat or document his injuries. Compl. [D.E. 1] at 5–8. For relief, plaintiff seeks $24,000.00. Id. at 9.

On December 16, 2021, the court conducted its initial review and allowed plaintiff's FTCA claim to proceed against the United States of America ("defendant"). Order [D.E. 9].

On May 13, 2022, defendant moved to dismiss for lack of jurisdiction, failure to state a claim, or, alternatively, for summary judgment, Mot. [D.E. 24], and filed a memorandum in support [D.E. 25], a statement of facts [D.E. 26], and an appendix [D.E. 27]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about this pending motion, the response deadline, and the consequences of failing to respond. [D.E. 28].

On November 9, 2022, the court noted plaintiff's failure to respond to defendant's motion and directed him to inform the court whether he intended to prosecute this case. Order [D.E. 29].

On December 9, 2022, plaintiff responded to the order to show cause. [D.E. 30].

On December 15, 2022, the court found plaintiff's response complied with the November 9, 2022, order to show cause, liberally construed this response as a motion for an extension of time to respond to defendant's pending motion, and allowed plaintiff until January 13, 2023, to file any response. Order [D.E. 31]. Plaintiff, however, failed to respond and the time to do so has passed.

### Facts:

On February 24, 2020, Lieutenant Franklin Troublefield, a Butner Complex Transportation Officer ("CTO"), was conducting a bus movement at the Butner Federal Medical Center to escort plaintiff and other inmates between Complex institutions. Def.'s Stmt. Mat. Facts. [D.E. 26] at ¶1, see Def.'s App., Troublefield Decl. [D.E. 27-1] at ¶3 (declaring plaintiff "was not transported to, from, or within the Butner Complex on March 6, 2020"). Plaintiff was handcuffed, had a martin chain around the waist, and had leg restraints with chains. Troublefield Decl. [D.E. 27-1] at ¶6.

Circa 12:30 p.m., while walking to a CTO bus seat, plaintiff tripped and fell on the floor when his leg restraints got caught on a floor hook that typically is used to secure wheelchairs. Id. at ¶4 (declaring, after tripping and falling, plaintiff stayed on the floor until Health Services staff responded to assess his potential injuries, but Troublefield did not witness him lose consciousness).

2

Circa 12:35 p.m., a second CTO bus made impact with the stationary CTO bus where plaintiff had fallen. Id. at ¶5 (declaring, while "awaiting Health Services staff to assist Plaintiff, I heard and felt an impact coming from the rear of the CTO bus we occupied. . . . Based on my observations, the second CTO bus was in motion backing up and scraped the side of the CTO bus I occupied with Plaintiff. To my knowledge neither I nor any of the other inmates on the bus at the time sustained any injuries. The only inmate that complained of an injury was Plaintiff.").

Plaintiff was seen by Butner Health Services for his injuries on both the date of this incident and on the following day. See Def.'s App., Declaration of Dr. Patrick Craft ("Dr. Craft Decl.") [D.E. 27-5] at ¶¶2–6; id., Attach. 1 [D.E. 27-6] at 1–3 (Feb. 24, 2020, Health Services Clinical Encounter Injury Assessment); id., Attach. 2 [D.E. 27-7] at 1–2 (Feb. 25, 2020, Health Services Clinical Encounter for sick call).

### Arguments:

Plaintiff argues that: Butner transport staff was negligent by not properly securing wheelchair restraints which caused his fall and loss of consciousness and in causing the motor vehicle accident; Health Services staff was negligent by "ignoring his complaints and purposefully failing to enter symptoms and complaints into [his] medical record"; and "as a result of the negligent action(s) and/or inaction(s), I suffered an unnecessary fall that resulted in injuries, and other injuries as a result of a collision between transport buses [sic]." Compl. [D.E. 1] at 5–7.

Defendant argues, *inter alia*: the discretionary function exception applies to plaintiff's injuries due to the trip and fall; as to the remaining claims, plaintiff fails to establish that any BOP officer breached their duty or that "action taken by actors of the United States were the proximate cause of his alleged injuries"; plaintiff received timely medical care on February 24, 2020; and his medical negligence claims are without merit. See Def.'s Mem. [D.E. 25] at 2, 9–28.

3

Legal Standards:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). To withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Giarratano, 521 F.3d at 302 (quotation omitted). The court, nevertheless, presumes as true the factual allegations in the complaint and construes these allegations in the light most favorable to the non-moving party. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Further, although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the

4

nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## Discussion:

"As a general rule, the United States is immune from claims for money damages in civil suits." Blanco Ayala v. United States, 982 F.3d 209, 214 (4th Cir. 2020) (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 686–90 (1949)). Pursuant to the FTCA, however, the United States waives its sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); Millbrook v. United States, 569 U.S. 50, 52 (2013); United States v. Muniz, 374 U.S. 150, 150 (1963) (finding a prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." (footnote omitted)).

"An action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred." Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)). Further, an FTCA plaintiff must "show that an unequivocal waiver of sovereign immunity exists[.]" Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005) (citation omitted). "If the plaintiff fails to meet this burden, then the claim must be dismissed." Id. (citation omitted).

5

The court first considers plaintiff's claims that Butner staff's negligence caused his injuries during transport. Under the FTCA's "discretionary function exception," sovereign immunity is not waived for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); see Blanco Ayala, 982 F.3d at 214 (noting the discretionary function exception "exists to prevent interference by the judiciary in the policy-laden balancing that accompanies the exercise of executive discretion" and protects "'discretion of the executive . . . to act according to [his] judgment of the best course, a concept of substantial historical ancestry in American law.'" (citations omitted)).

To determine if the discretionary function exception applies, courts first inquire if the acts in question "are discretionary in nature" because they "involv[e] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). If a federal statute, regulation, or policy specifically prescribes the government actor's course of action, this exception does not apply. Berkovitz, 486 U.S. at 536.

Second, courts "must determine whether the challenged 'governmental actions and decisions' were 'based on considerations of public policy.'" Blanco Ayala, 982 F.3d at 214 (quoting Berkovitz, 486 U.S. at 537). "When statutes, regulations, or agency guidelines grant discretion to a government agent, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" Id. (quoting Gaubert, 499 U.S. at 324). Courts, however, "do not 'inquire whether policy considerations *were actually* contemplated in making a decision.'" Id. at 214–15 (citation omitted, emphasis original). Instead, courts "consider only whether 'the nature of the challenged decision in an objective, or general sense, . . . is one which we would expect inherently to be grounded in considerations of policy.'" Id. at 215 (citation omitted).

6

Lieutenant Troublefield declares, *inter alia*: BOP Program Statement 5338.07, Escorted Trips, outlines BOP staff's mandatory requirements when transporting inmates; for "IN custody inmates," the program statement allows officers discretion to determine what restraints, if any, will be utilized during transport beyond the required handcuffs with martin chains; on Feb. 24, 2020, Troublefield "utilized handcuffs with martin chains, as well as leg restraints and chains to transport all inmates"; "there are no additional statutes, policies, or agency regulations that mandate either: 1) the way in which BOP officers must utilize restraints on an inmate during transportation; or 2) the way in which BOP officers must secure a handicapped individual in a vehicle during transportation"; when transporting inmates, BOP officers consider, among other concerns the safety of officers, inmates, and the public, and preventing escape, contraband access, or injuries; and "safety considerations do not change based upon the physical capabilities of the individual inmate during transport." Def.'s App., Troublefield Decl. [D.E. 27-1] at ¶¶6–8.

A review of the attached BOP Program Statement 5338.07 supports Troublefield's declaration. See Def.'s App., Troublefield Decl. Attach. 3 [D.E. 27-4] at 14 (providing that, when escorting IN custody inmates, handcuffs with martin chains are required, while "additional restraint equipment may be used at the escorting officer's discretion.").

Plaintiff does not contest Troublefield's declaration that he was an IN custody inmate, that Troublefield exercised his discretion both to apply leg chains and in how wheelchair restraints were deployed, that these decision to apply leg chains and deploy wheelchair restraints were based on considerations of public policy, and that these leg chains catching on a wheelchair restraint caused plaintiff's fall. Thus, because the court finds that both prongs of the discretionary function exception are satisfied here, the court dismisses this aspect of plaintiff's complaint. See Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536–37; Blanco Ayala, 982 F.3d at 214; see also Cooke v.

7

United States, No. 5:19-CT-3321-M, 2021 WL 1988163, at *3 (E.D.N.C. May 18, 2021) (dismissing, under the FTCA's discretionary function exception, a suit alleging injury during transport when Butner staff improperly secured a wheelchair).

As to the motor vehicle accident ("MVA"), a *prima facie* negligence claim under North Carolina law requires plaintiff to allege that "defendants owed plaintiff a duty of care, defendants' conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury." Lamm v. Bissette Realty, Inc., 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990); see Bowen v. Mewborn, 218 N.C. 423, 427, 11 S.E.2d 372, 374–75 (1940) ("'Actionable negligence in the law of torts is a breach of some duty imposed by law or a want of due care—commensurate care under the circumstances—which proximately results in injury to another.'" (citation omitted)); Shaver v. United States, 319 F. Supp. 2d 649, 663 (M.D.N.C. 2004). At issue here is whether the MVA proximately caused plaintiff's injuries.

"Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred[.]" Hairston v. Alexander Tank & Equipment Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (collecting cases). "To establish that negligence was a proximate cause of the injury suffered, a plaintiff must establish that the injury would not have occurred but for the defendant's negligence." Liller v. Quick Stop Food Mart, Inc., 131 N.C. App. 619, 624, 507 S.E.2d 602, 606 (1998) (citation omitted). "The burden rests upon a plaintiff to prove 'by the greater weight of the evidence' that a defendant's conduct was the proximate cause of the injuries alleged in an action for negligence." Clarke v. Mikhail, 243 N.C. App. 677, 686, 779 S.E.2d 150, 158 (2015) (quoting Wall v. Stout, 310 N.C. 184, 201, 311 S.E.2d 571, 581 (1984)). Although usually a question for the jury, Lamm, 327 N.C. at 418, 395 S.E.2d at 116 (citations omitted), "[p]roximate

8

cause is an inference of fact, to be drawn from other facts and circumstances. If the evidence be so slight as not reasonably to warrant the inference, the court will not leave the matter to the speculation of the jury." Hampton v. Hearn, 269 N.C. App. 397, 401, 838 S.E.2d 650, 655 (2020) (quoting Conley v. Pearce-Young-Angel Co., 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944)).

As noted above, Troublefield declares, in relevant part, plaintiff was injured when he tripped and fell on his face because his leg chains caught on wheelchair restraints on a stationary CTO bus, a moving CTO bus subsequently scraped the stationary CTO bus while plaintiff remained on the floor awaiting an injury assessment, and that, to Troublefield's knowledge, no inmates or staff on the stationary CTO bus sustained injuries aside from plaintiff's complaints. See Def.'s App., Troublefield Decl. [D.E. 27-1] at ¶¶3–5.

Photographs of minor damage to the stationary CTO bus's drivers-side rear quarter panel and window, and to the moving CTO bus's right rear marker light, support Troublefield's averment that the MVA amounted to these buses merely "scraping." See id., Attach. 2 [D.E. 27-3] at 4–8.

Additionally, contemporaneous medical records reflect plaintiff's statements attributing his injuries to falling face-first when he "tripped over a buckle" on the CTO bus floor, causing his head to "hurt[]" and a "busted" lip. See Def's. App., Dr. Craft Decl. Attach. 1 [D.E. 27-6] at 1–3 (Feb. 24, 2020, Health Services Clinical Encounter Injury Assessment); id., Attach. 2 [D.E. 27-7] at 1–2 (Feb. 25, 2020, Health Services Clinical Encounter for sick call where plaintiff reported, as his chief complaint, "pain throughout his body status post falling on CTO bus on yesterday; he reports he tripped over chain and hit a wheelchair on CTO bus. He reports another bus hit the CTO bus when he fell down on the floor. He reports having bleeding from his mouth.").

Although plaintiff now ascribes "further injury" due to the "collision between transport buses," Compl. [D.E. 1] at 5, the complaint is not verified, cf. Goodman v. Diggs, 986 F.3d 493,

9

498 (4th Cir. 2021), and, despite having multiple opportunities to do so, plaintiff also has not offered affidavits, declarations, or other competent summary judgment evidence in opposition to defendant's instant motion seeking, *inter alia*, summary judgment, see Celotex, 477 U.S. at 324; cf. Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021).

"[D]rawing from the facts and circumstances" of this case, the court finds that only one inference can be drawn; namely, that plaintiff's CTO bus trip-and-fall, claims for which were dismissed above under the discretionary function exception, was the proximate cause of his injuries, but evidence that the MVA also was a proximate cause of these injuries is "so slight as not reasonably to warrant the inference." Hampton, 269 N.C. App. at 401, 838 S.E.2d at 655; see Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Thus, defendant has met the burden of demonstrating the absence of a genuine issue of material fact as to proximate causation, Celotex, 477 U.S. at 325, whereas plaintiff merely rests upon the allegations in his complaint, cf. Anderson, 477 U.S. at 248–49, and fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Accordingly, defendant is entitled to summary judgment on the MVA related claims. Anderson, 477 U.S. at 249; cf. Olds v. United States, 473 F. App'x 183, 184 (4th Cir. 2012) (per curiam) (unpublished) (reversing trial court's entry of summary judgment on FTCA claim because "more than one inference could be drawn as to the proximate cause of [the plaintiff's] injuries").

10

The court now turns to plaintiff's medical-related claims. Plaintiff alleges that Butner Health Services staff ignored his severe headache and neck pain complaints, "did no kind of concussion protocol [sic]," did not provide pain medication, "purposely fail[ed] to enter symptoms and complaints into [his] medical records," and that, "since the date of events and negligence described herein[,] [he has] suffered reoccurring headaches, neck stiffness and soreness, [his] teeth and gums hurt sometimes, and [he has] had reoccurring bouts of becoming disoriented." See Compl. [D.E. 1] at 5–8.

"In a medical malpractice action, a plaintiff must show (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." Weatherford v. Glassman, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998) (citation omitted).

> Upon a motion for summary judgment, "[t]he moving party carries the burden of establishing the lack of any triable issue . . . and may meet his or her burden by proving that an essential element of the opposing party's claim is nonexistent[.]" *Lord v. Beerman,* 191 N.C.App. 290, 293, 664 S.E.2d 331, 334 (2008) (internal quotations and citations omitted). If met, the burden shifts to the nonmovant to produce a forecast of specific evidence of its ability to make a *prima facie* case, *Draughon v. Harnett Cty. Bd. of Educ.,* 158 N.C.App. 705, 708, 582 S.E.2d 343, 345 (2003), "which requires medical malpractice plaintiffs to prove, in part, that the treatment caused the injury. Not only must it meet our courts' definition of proximate cause, but evidence connecting medical negligence to injury also must be probable, not merely a remote possibility." *Cousart v. Charlotte–Mecklenburg Hosp. Auth.,* 209 N.C.App. 299, 302, 704 S.E.2d 540, 543 (2011) (quotation and citation omitted).

Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC, 240 N.C. App. 337, 341, 770 S.E.2d 159, 162 (2015).

As to plaintiff's medical-related claims, Dr. Craft declares, *inter alia*: Dr. Craft, as a Butner physician, has treated plaintiff; shortly after the February 24, 2020, incidents, plaintiff was assessed by a registered nurse; "Plaintiff represented that he 'tripped over the buckle' on the bus floor and 'busted [his] lip and [his] head hurts'"; it was noted he "fell face first in the bus and

11

sustained a small superficial 1 cm abrasion on his bottom lip"; plaintiff was transported to the Federal Medical Center for further evaluation; he "was alert and oriented during this interaction and his vitals were stable"; and "no other injuries or issues were noted by plaintiff or medical staff at the time"; on February 25, 2020, plaintiff was seen for a sick call complaining of pain throughout his body and bleeding from his mouth following the prior day's CTO bus incident; an assessment by medical staff found plaintiff alert, oriented, and cooperative, noted plaintiff self-ambulated with no unsteady gait, noted no abrasions on his face, hands, knees, or torso, but noted an abrasion to the inner oral mucosa on his lower lip that was not bleeding at the time of assessment; "since the February 25, 2020 clinical encounter, Plaintiff has not requested any additional treatment, nor has he reported to medical staff again with any concerns related to the incidents on February 24, 2020"; Dr. Craft has reviewed plaintiff's Bureau of Prisons electronic medical record ("BEMR") and "did not find any further requests from Plaintiff, nor did he require medical treatment for headaches, neck stiffness, tooth or gum pain that did not exist prior to February 24, 2020, or disorientation [sic]"; "[a]ll staff members are required to enter medical information into BEMR when caring for inmates, or when receiving medical complaints from inmates"; and "[i]f an inmate is seen at sick call or by a medical provider, the information is required to be timely and accurately entered into BEMR." Def.'s App., Dr. Craft Decl. [D.E. 27-5] at ¶¶2–8.

The record supports Dr. Craft's declarations as to plaintiff's treatment on February 24 and 25, 2020. See Def's. App., Dr. Craft Decl. Attach. 1 [D.E. 27-6] at 1–3 (Feb. 24, 2020, Health Services Clinical Encounter Injury Assessment noting: as to date of injury, Feb. 24, 2020, at 12:30 p.m.; as to date reported for treatment Feb. 24, 2020, at 1:30 p.m.; as to pain location, head; as to where the injury occurred, "Marshall circle of FMC"; as to cause of injury, according to plaintiff, "I tripped over the buckle"; as to the symptoms reported by plaintiff, "I busted my lip and my head

hurts"; as to the assessment, "Inmate stated that he tripped over the buckle on the bus floor. Inmate stated that he fell face first. Small superficial 1 cm cut noted to bottom lip. Inmate taken to urgent care to be assessed by FMC provider. Alert, and oriented x3. Vitals stable. No further injuries or issues"; as to the disposition, "return to sick call if not improved"; and, as to "other," "Provider at the FCI 2 made aware of injury."); Id., Attach. 2 [D.E. 27-7] at 1–2 (Feb. 25, 2020, Health Services Clinical Encounter for mid-level provider sick call recording: as chief complaint, "pain throughout his body status post falling on CTO bus on [sic] yesterday; he reports he tripped over chain and hit a wheelchair on CTO bus. He reports another bus hit the CTO bus when he fell down on the floor. He reports having bleeding from his mouth"; as to the exam, finding him cooperative, alert and oriented x3, "negative for any abrasion to facial area, hands, bilateral knees, anterior and posterior torso," noting a "small abrasion to inner oral mucosa to lower lip. No bleeding observed on physical exam today," and plaintiff "ambulated to writer's office without any difficulty. Gait steady"; as to the assessment, "pain in unspecified joint"; as to the plan, prescribing ibuprofen 400 mg orally thrice daily in pill line and ibuprofen 400 mg orally thrice daily for five days from the commissary; as to the disposition, "follow-up at sick call as needed"; and, as to the plan of care, "no further medical work-up medically necessary at this time" aside from pain medication).

As to whether treatment by Butner Health Services staff caused the injuries of which plaintiff complains, defendant has shown the non-existence of this essential element whereas plaintiff fails to "produce a forecast of specific evidence of its ability to make a *prima facie* case." Hawkins, 240 N.C. App. at 341, 770 S.E.2d at 162.

Plaintiff does not contest Dr. Craft's declarations–that he was medically assessed shortly after the February 24, 2020, incidents; that this assessment recorded his subjective complaints that his head "hurt" and his lip was "busted," observed he was alert and oriented, and noted as the only

13

injury a superficial 1 cm abrasion on his bottom lip; that he actually was provided pain medication after being reassessed at a February 25, 2020, sick call with a small, non-bleeding abrasion on his lower lip; that all staff are required to enter medical information into the BEMR; and that there is no BEMR record that he sought any subsequent care pursuant to the February 24, 2020, incidents. Also, as noted above, the complaint is not verified, Goodman, 986 F.3d at 498, and plaintiff has not offered affidavits, declarations, or other competent summary judgment evidence in opposition to defendant's motion, see Celotex, 477 U.S. at 324; cf. Pledger, 5 F.4th at 525–27. Thus, plaintiff's bald, speculative claims–that Butner Health Services staff was negligent in the treatment and documentation of his injuries–cannot survive defendant's motion for summary judgement. See Anderson, 477 U.S. at 252; Bouchat, 346 F.3d at 522.

In sum, defendant has met the burden of demonstrating the absence of a genuine issue of material fact as to plaintiff's medical-related claims, Celotex, 477 U.S. at 325, whereas plaintiff merely rests upon the allegations in his complaint, cf. Anderson, 477 U.S. at 248–49, and again fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Accordingly, defendant also is entitled to summary judgment on these claims. Anderson, 477 U.S. at 249.

Conclusion:

For the above reasons, the court GRANTS defendant's motion to dismiss or, alternatively, for summary judgment [D.E. 24], and DISMISSES the action. The clerk shall close the case.

SO ORDERED. This 6th day of March 2023.

RICHARD E. MYERS II
Chief United States District Judge

14